FEE PAID
S/I

FILED

2024 NOV 25  PM 3: 10

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY_____MRV

ROBERT WHEELER
7127 Camino Degrazia Unit 121
San Diego, CA, 92111
Phone Number (619) 846-5783
Fax Number:  Not available
Email:  throwinstones21@gmail.com

Peter Anderson, Attorney
24th Floor
865 South Figueroa Street
Los Angeles, CA 90017-2566
213-633-6800

ROBERT WHEELER, IN PRO SE

## U.S. DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WHEELER, an individual,<br>7127 Camino Degrazia, Unit 121<br>San Diego, CA. 92111 brings this action.<br><br>        Plaintiff(s),<br><br>    vs.<br><br>JOHN MELLENCAMP, an individual residing at<br>1200 Toro Canyon Road, Santa Barbara,<br>California, 93108, is a citizen of the Unit States<br>and conducted acts relevant to this case within<br>this judicial district.<br>        Defendant(s). | Case No.: 2:24cv10176-DSF(JCx)<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DATE:**<br>**TIME:**<br>**DEPT:**<br><br>Judge:<br>Dept:<br>Action Filed:<br>Trial Date: |

COMES NOW Plaintiff ROBERT WHEELER and complains against Defendants

JOHN MELLENCAMP, and REPUBLIC RECORDS and DOES 1 – 59 for causes of action alleged

as follows:

////

////

Complaint

**PARTIES**

1.  At all times herein mentioned, Plaintiff ROBERT WHEELER ("PLAINTIFF") was, and now is, an individual doing business in the County of Los Angeles, State of California.

2.  At all times herein mentioned, PLAINTIFF has been a musician since the early 1990s.

3.  At all times herein mentioned, Defendant JOHN MELLENCAMP ("DEFENDANT") was, and now is, a musician located in the County of Los Angeles, State of California.

4.  At all times herein mentioned, Defendant Republic Records ("DEFENDANT") is a record label of Los Angeles, State of California, and is John Mellencamp's record label/employer.

5.  The true names and capacities of Defendants are unknown to PLAINTIFF, who therefore sues said defendants by such fictitious names and will ask leave to amend this complaint to show their true names and capacities when the same have been ascertained.

**JURISDICTION**

6.  This Court has Subject matter jurisdiction under 28 U.S.C. § 1331 as the action arises under the original and exclusive jurisdiction of the federal court and 28 U.S.C. § 1338(a) as the controversy arises under the Copyright Act of 1976 (17 U.S.C. § 101 et seq.).

7.  28 USC § 1338 · Patents, plant variety protection, copyrights, mask works, designs, trademarks, and unfair competition2 (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks.

8.  This Court has personal jurisdiction over Defendants as discussed fully herein.

9.  This Court has general personal jurisdiction over Defendant JOHN MELLENCAMP because, upon information and belief, he is a resident of the State of California and Judicial District, owns property in this Judicial District, and has other substantial contacts with the State of California and with this Judicial District specifically.

10. This Court has specific personal jurisdiction over JOHN MELLENCAMP because this suit arises from or relates to his contacts with the State of California and this Judicial District.

   - The infringing song was distributed, sold, and marketed in the forum state.

Complaint

- The defendant's business activities related to the infringement targeted consumers in the plaintiff's state.
- **Connection to the Claim**: The copyright infringement claim arises out of or relates to the defendant's activities in the forum state.
- **Reasonableness**: Exercising jurisdiction would not offend traditional notions of fair play and substantial justice, especially since the defendant owns property and has familial ties in the state.

11. Upon information and belief, Defendant JOHN MELLENCAMP owns a home in Santa Barbara California.

12. Upon information and belief, Defendant JOHN MELLENCAMP produced the music video of the Infringing Composition in the State of California.

13. Upon information and belief, the Infringing Sound Recording was also recorded in whole or in part in California.

14. JOHN MELLENCAMP has offered or authorized the licensing, distribution, and sale of the Infringing Works to residents of California and California companies within this Judicial District.

15. Upon information and belief, JOHN MELLENCAMP is signed to Republic Records located in Santa Monica, California.

16. Defendant facilitated the infringing acts occurring in the United States, specifically in California.

17. Defendant has generated substantial revenue from the exploitation of the Infringing Works in California and has engaged in a coordinated marketing and advertising campaign related to the Infringing Works.

18. Furthermore, given Defendants willful and knowing exploitation of the Infringing Works in California, each could certainly and reasonably anticipate being hailed into a court in the United States, specifically the State of California. Thus, jurisdiction could be exercised constitutionally by this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and California's long-arm statute Cal. Code Civ. Proc. § 410.10. Additionally, a state may constitutionally

exercise personal jurisdiction over a nonresident as long as he or she has minimum contact with that forum, such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [Citations.]' (Internat. Shoe Co. v. Washington (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154].)" (Taylor-Rush v. Multitech Corp. (1990) 217 Cal.App.3d 103, 112 [265 Cal.Rptr. 672] (Taylor-Rush); see Pavlovich v. Superior Court (2002) 29 Cal.4th 262 [127 Cal.Rptr.2d 329, 58 P.3d 2] (Pavlovich).)

## VENUE

19. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this Judicial District. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1400 as at least one of the Defendants resides or may be found in this Judicial District and is subject to personal jurisdiction. Copyright cases fall under federal jurisdiction, and the venue is proper where the defendant resides or where a substantial part of the events giving rise to the claim occurred, in accordance with 28 U.S.C. § 1400(a). Given that the defendant conducts business, owns property, and has family in the plaintiff's state, this strongly supports venue in the state of California.

20. This case is properly filed in the U.S. District Court Central District of California, as a substantial part of events giving rise to this case occurred in the U.S. District Court Central District of California. "The Court has personal jurisdiction over the Defendant because he owns property, conducts business, and has significant familial connections within this jurisdiction. These continuous and systematic contacts render the Defendant subject to general jurisdiction in this state. Alternatively, Defendant has purposefully directed his infringing activities at this forum, and the harm to Plaintiff arose directly from those activities, satisfying the requirements for specific jurisdiction. Venue is proper under 28 U.S.C. § 1400(a) as a substantial part of the infringing acts occurred within this district."

## GENERAL ALLEGATIONS:

21. This claim arises from the willful copyright infringement of Plaintiff's original musical composition titled *"Coffee."* The musical composition is duly registered with the United

States Copyright Office under Registration Number SR 902-078. and "A true and correct copy of the Copyright Registration Certificate for the Original Work is attached hereto as Exhibit A." Plaintiff, the writer and musician of *"Coffee,"* created the song, which was produced and released in 1995. *"Coffee"* was included on the album *"Spontaneous,"* released by the band *Throwin Stones*, of which Plaintiff was a member.

22. Plaintiff composed and recorded the musical work *"Coffee"* in 1995 at Golden Track Production Studios in San Diego, California. The recording was made as part of creating the original, copyrighted composition, which is now the subject of this infringement claim.

23. Defendant is the credited writer, performer, publisher, and administrator of the infringing musical composition *"Key West Intermezzo (I Saw You First)."* Defendant knowingly copied Plaintiff's original work *"Coffee"* without obtaining a license or consent and subsequently exploited the infringing work for personal and financial gain to the detriment of Plaintiff's rights. The infringing work appropriates, both quantitatively and qualitatively, substantial and protected elements of Plaintiff's original work in a manner that is unmistakably recognizable to an ordinary observer. The similarities between the works are substantially and striking similar to the original, which is of a particularly unique and distinctive nature. The infringement is not isolated but permeates throughout the entire infringing work, affecting both compositions' very essence and foundation.

24. In the alternative, the works are so strikingly similar that they render any reasonable possibility of independent creation implausible. The similarities between the works are not only extensive but also involve unique, original, and distinctive elements that are inexplicable without the occurrence of copying. Even in the absence of direct proof of access, the degree of similarity alone provides a compelling inference that copying occurred.

25. The "hook" in both songs is strikingly similar and contains highly unique and rare elements, along with other identifiable and protected features that further support the infringement claim.

26. Plaintiff spent numerous years performing "Coffee" at various bars, clubs, and live music venues. As a member of the band Throwin Stones, Plaintiff performed "Coffee" at numerous

clubs and events throughout Los Angeles, San Diego, and other venues across the United States, ensuring that the song was widely known and publicly performed.

27. Plaintiff released the original musical composition "Coffee" in 1995 as part of the album Spontaneous, which was distributed and sold through major retail outlets, including Tower Records, Warehouse Records, and Sam Goody. The album achieved significant commercial success, selling thousands of copies across the United States.

28. In addition to the album's retail sales, "Coffee" and other tracks from Throwin Stones were frequently played on various radio stations nationwide, further expanding the song's exposure and popularity.

29. The lyrics of the Original Work, *"Coffee,"* tell a heartfelt love story that captures the simple yet profound moments that lead to a lasting relationship. The song depicts a chance encounter between a man and a woman whose eyes meet by coincidence. They share a cup of coffee, find a mutual connection, and eventually fall in love. Over time, their relationship deepens, and months later, they find themselves living together in the same home.

30. In *"Coffee,"* the man and woman meet when they spot each other through their windows on a Friday evening. The woman, summoning the courage to approach, goes to his house, where she is warmly invited inside. They share coffee and a chocolate chip cookie, beginning a beautiful relationship. As their bond grows, they continue to share their love over coffee, and months later, they live together, united by their love and symbolized by matching wedding bands on their fingers.

31. In 1996, Defendant released the song *"Key West Intermezzo (I Saw You First)"* as part of his commercially successful album *Mr. Happy Go Lucky*

32. The lyrics of the Infringing Work, *"Key West Intermezzo (I Saw You First),"* similarly tell a love story in which a man reflects on his initial encounter with a woman, claiming that he saw her first. The song's narrative revolves around the evolution of their relationship, as the man recounts how their love develops, focusing on his perspective of their first meeting.

33. The Infringing Work, *Key West Intermezzo (I Saw You First)*, achieved significant commercial success, further exacerbating the harm caused by Defendants' infringement of

Complaint

Plaintiff's copyright. Specifically, the infringing song reached number 14 on the U.S. Billboard Hot 100, number 4 on the Billboard Adult Top 40, number 10 on the Billboard Mainstream Rock Tracks chart, and number 1 on the Canadian charts. The widespread recognition and financial success of the infringing work demonstrate the extensive exploitation of Plaintiff's protected material, compounding the damages suffered by Plaintiff as a result of the unauthorized use of his Original Work.

34. In approximately November 2021, PLAINTIFF became aware of the musical similarities of both songs while shopping. It was immediately apparent that "*Key West Intermezzo (I Saw You First)*" used the Original Work without permission.

35. The Infringing Work, *Key West Intermezzo (I Saw You First)*, and Plaintiff's Original Work, Coffee, are substantially and strikingly similar in multiple respects, including but not limited to the following:

- **The Hook**: Both the Original Work, *Coffee*, and the Infringing Work, *Key West Intermezzo (I Saw You First)*, employ a distinctive and recurring hook that serves as a central and recognizable element in each composition. The melodic structure of the hook in both works is strikingly similar, with nearly identical note patterns that form the thematic foundation of each song. Specifically, the Original Work employs a lead guitar to render the seven-note hook, while the Infringing Work uses a bass guitar to perform the initial note of the hook, followed by a lead guitar executing the remaining six notes. The guitar also plays the eighth note that is added between the sixth and the seventh. Notably, the Infringing Work introduces an eighth note placed between the sixth and seventh notes of the original hook played by the guitar. This substitution of instruments does not alter the substantial similarity in the melodic and structural composition of the hook, which remains a focal point of both songs and constitutes a direct copying of Plaintiff's protected musical expression. This direct copying of Plaintiff's protected musical expression constitutes an infringement of Plaintiff's exclusive rights under the Copyright Act.

Complaint

- **The Breakdown**: The breakdown sections in both works are compositionally and structurally similar, replicating the unique arrangement and tone of Plaintiff's work.

- **Initial Vocal Structure**: The vocal phrasing in *Key West Intermezzo (I Saw You First)* mirrors the structure, rhythm, and delivery of the opening vocal sequence in Coffee.

- **Use of an Organ**: Both works employ an organ in an identical manner during their respective breakdowns, creating a distinctive and recognizable similarity.

- **Drum Breakdown**: The drum breakdown in *Key West Intermezzo (I Saw You First)* at bar 21 closely parallels the drum breakdown in Coffee, which begins at bar 17, replicating a unique percussive element of Plaintiff's composition.

- **Mirroring of the Second Verse**: The second verse of Defendant's Infringing Work, *Key West Intermezzo (I Saw You First)*, mirrors Plaintiff's Original Work, Coffee, both in thematic content and lyrical approach. Specifically, Defendant's lyrics, "She stirs the ice in a glass with her elegant fingers, I want to be what she's drinking, yeah, I just want to be," closely parallel Plaintiff's original lyric, "Please come in, have a seat. I've got no wine, but ooo, would you like a cup of coffee."

- **Shared Concept of a Drink:** Both works center the metaphor of a drink as a pivotal element within their respective narratives. In Plaintiff's Coffee, the offer of coffee paired with the symbolic mention of wine represents the initiation of connection and intimacy. Similarly, the Infringing Work uses the imagery of a drink, expressed through lyrics such as "I want to be what she's drinking," to evoke a comparable sense of attraction and emotional engagement. The consistent use of this shared metaphor as a pivotal narrative device further supports the argument of substantial similarity in the thematic and lyrical content between the two works.

- **Improper Use of Protectable Expression:** Defendant's use of this shared lyrical theme and expression represents more than a mere coincidence or common idea—it reflects an appropriation of Plaintiff's unique arrangement and protectable elements

Complaint

in *Coffee*. The similarities underscore Defendant's infringement by exploiting a distinctive lyrical and thematic element foundational to Plaintiff's Original Work.

- **Additional Evidence**: Other infringement and striking similarity elements have been identified and will be substantiated with expert analysis and testimony at trial.

These similarities demonstrate an unlawful appropriation of protectable elements from Plaintiff's song Coffee and further support the conclusion that Defendants copied Plaintiff's Original Work without authorization.

## FIRST CAUSE OF ACTION

### (Direct, Contributory, and Vicarious Infringement)

### (Against All Defendants)

36. PLAINTIFF incorporates and realleges each of the allegations contained above, as though fully set forth herein.

37. Plaintiff is the owner of the United States copyright in the musical composition "Coffee," Registration Number, SR 902-078.

38. Defendants have directly, vicariously, and/or contributorily infringed and/or induced infringement of Plaintiff's' copyright in violation of 17 U.S.C. § 501.

39. Defendants' Access to *Coffee*: As outlined above, Defendants had access to Plaintiff's Original Work, *Coffee*. The song was widely disseminated through performances by Plaintiff's band *Throwin Stones*, distribution of the *Spontaneous* CD in prominent retail record stores, and airplay on radio stations across the United States. The widespread availability of *Coffee* makes it highly plausible that Defendants encountered the Original Work prior to creating the Infringing Work.

40. Defendants' acts were performed without Plaintiff's' permission, license, or consent. Defendants' unauthorized reproduction, distribution, public performance, display, and creation of the derivative work, "*Key West Intermezzo (I Saw You First)*," infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 et. seq.

41. Defendants' infringement has been and continues to be willful, intentional, purposeful, and with complete disregard to Plaintiff's rights.

Complaint

42. As a direct and proximate cause of Defendants' infringement, Plaintiff has been irreparably harmed.

43. "Key West Intermezzo (I Saw You First)" copies prominent, particularly unique and rare, qualitatively, and quantitively important, original parts of "*Coffee*" and includes them in quantitatively and qualitatively important portions of the Infringing Works. This copying satisfies both the intrinsic and extrinsic tests to establish copyright infringement. The copied portions in the works show that the two works are substantially similar.

44. From the date of creation of "*Key West Intermezzo (I Saw You First*," all Defendants have infringed Plaintiff's copyright interest in "Coffee" including: (a) by substantially copying and publicly performing "*Key West Intermezzo (I Saw You First*)," and or authorizing the copying and public performance, including publicly performing at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the Infringing Works through records, digital downloads, the execution of licenses, and/or actually selling, manufacturing through the execution of licenses, and/or actually selling, manufacturing, and/or distributing "*Key West Intermezzo (I Saw You First*)" through various sources; (c) by substantially copying the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performance, and other merchandise; and (d) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "Coffee" in and as part of "Key West Intermezzo (I Saw You First)," packaged in a variety of configurations and digital downloads, mixes, and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

45. Plaintiff has not received any copyright ownership interests, royalties, or other compensation for the exploitations of "*Key West Intermezzo (I Saw You First)*" or any derivative works or associated exploitations thereof. Despite the unauthorized use of Plaintiff's original work, "*Coffee,*" in the creation and commercialization of "*Key West Intermezzo (I Saw You First),*

Complaint

1    Defendants have failed to provide Plaintiff with any recognition, financial benefit, or

2    ownership rights tied to the infringing work.

3    46. Defendants have engaged and continue to engage in the unauthorized reproduction,

4    distribution, and manufacturing of large quantities of the song *Key West Intermezzo (I Saw*

5    *You First)* in violation of Plaintiff's exclusive copyright. Defendants have unlawfully

6    marketed, exploited, and monetized the infringing work, including granting or facilitating

7    the granting of licenses to third parties to reproduce, sample, and/or distribute the infringing

8    work without Plaintiff's authorization.

9    47. Defendants possessed the right and ability to supervise and control the infringing activities

10    of third parties but willfully failed to exercise that authority. Through their deliberate

11    inaction, Defendants knowingly facilitated and profited from the unlawful exploitation of

12    Plaintiff's copyrighted work. As a direct result, Defendants derived substantial financial

13    benefits from these infringing acts and are vicariously liable for the unauthorized use and

14    exploitation of Plaintiff's original work, *"Coffee*.

15    48. With full knowledge of the ongoing infringement, Defendants actively and materially

16    contributed to the direct infringement alleged herein. Defendants granted licenses, promoted

17    the infringing work, and facilitated its widespread distribution, thereby enabling and

18    perpetuating the unauthorized exploitation of Plaintiff's original work. Such actions

19    establish Defendants' contributory liability for the harm caused to Plaintiff under the

20    Copyright Act.

21    49. The infringement remains ongoing, as the infringing work *Key West Intermezzo (I Saw You*

22    *First)* continues to be licensed, sold, downloaded, distributed as ringtones, master tones, and

23    otherwise exploited by Defendants and/or their agents, causing further damage to Plaintiff's

24    exclusive rights under the Copyright Act.

25    50. As a direct and proximate result of Defendants' unlawful infringement, Plaintiff is entitled

26    to relief pursuant to 17 U.S.C. § 504(a)(1) and (b). Specifically, Plaintiff seeks to recover

27    actual damages incurred as a result of Defendants' infringement, as well as all profits

28    attributable to the use, exploitation, or distribution of the infringing work *Key West*

Complaint

*Intermezzo (I Saw You First)*. This includes Defendants' profits derived from the sale and distribution of the infringing work both domestically and internationally, as permitted by law, where such profits are attributable to the infringement of Plaintiff's copyrighted material. Furthermore, Plaintiff is entitled to a running royalty on all future exploitations, sales, and other uses of *Key West Intermezzo (I Saw You First)* to ensure the ongoing protection of Plaintiff's exclusive rights under the Copyright Act.

51. Defendant John Mellencamp copied the distinctive seven-note pattern found in the hook of Plaintiff's song *Coffee* and its unique structural foundation. Mellencamp slightly modified the pattern by extending it to eight notes and inserting an additional note between the sixth and seventh notes of the original hook. After adding a single note to the hook of *Intermezzo I Saw You First*, Defendant John Mellencamp improperly claimed the song as his own, violating copyright law. The similarities between *Coffee* and *I Saw You First* are so precise and strikingly similar that they constitute clear extrinsic similarities, demonstrating objective and substantial overlap in the protectable elements of the works. These objective similarities in the works' ideas and protectable expressions further demonstrate infringement under copyright law. Under copyright law, the intrinsic test involves a subjective comparison of two works to evaluate whether they are substantially similar in their "total concept and feel." This test asks the jury to determine whether an ordinary person would perceive the defendant's work as substantially similar to the plaintiff's, particularly in how both works express shared ideas. An expert will analyze the extrinsic elements of the works. Under the extrinsic test, which objectively compares the protectable elements of the two works, expert testimony will help identify and differentiate the protectable aspects from the unprotectable ones. A detailed analysis of these similarities is attached hereto as **Exhibit B**.

52. John Mellencamp unlawfully used the hook from Plaintiff's song *Coffee* without authorization, violating both intrinsic and extrinsic aspects of copyright law.

53. The Copyrighted Work and the Allegedly Infringing Work are so strikingly similar that it is virtually impossible for these similarities to have resulted from independent creation or coincidence. These similarities include, but are not limited to, the following.

Complaint

54. The song *Key West Intermezzo (I Saw You First)* incorporates the same distinctive six-note hook as *Coffee*. Mellencamp modified the hook by adding an eighth note between the sixth and seventh notes, altering the original seven-note pattern to eight notes. In addition to the hook, Mellencamp used other unique elements of the structure and foundation of the copyrighted song *Coffee*, as detailed below.

- An analysis of the melodic structure reveals that six of the seven notes in the hook of both *Coffee* and *Key West Intermezzo (I Saw You First)* are strikingly similar, both in sequence and rhythm. The similarity is so precise that it suggests direct copying rather than independent creation. The addition of a seventh note in the infringing work does not negate the substantial similarity or the distinctive nature of the original hook, which remains a defining feature of the Plaintiff's composition.

- The verses of *Key West Intermezzo (I Saw You First)* and *Coffee* share a remarkably similar structural arrangement, including the sequence, rhythm, and pacing of lyrical delivery. This structural overlap highlights a pattern of mimicry that reinforces the substantial and striking similarity between the original and infringing works. The parallels in the verse arrangements contribute to the overall impression of copying and further support Plaintiff's claims of unauthorized reproduction and infringement.

- The breakdown section of *Key West Intermezzo (I Saw You First)* mirrors the corresponding section of *Coffee* in several critical respects. Both works employ the distinctive use of an organ to establish the tone and atmosphere of the breakdown. This instrumentation is used in a similar manner, underscoring the melodic and rhythmic elements in both compositions. Furthermore, the vocal arrangement and delivery during the breakdown in the infringing work closely imitate the structure and phrasing of the original composition, reinforcing the striking similarity between the two pieces.

1. **Unauthorized Copying by Defendant**:
   Defendant has unlawfully created, reproduced, or distributed a work titled [Allegedly

Complaint

Infringing Work], which copies substantial and protectable elements of the Copyrighted Work without authorization.

2. **Inference of Copying Without Evidence of Access**:

While Plaintiff cannot definitively establish direct access to the Copyrighted Work at this stage, the striking similarity between the works gives rise to a reasonable inference of copying. Courts have held that in the absence of proof of access, striking similarity alone can support a claim of infringement. See *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996).

3. **Failure of Independent Creation Defense**:

Given the striking similarity between the works, it is implausible that Defendant independently created [Allegedly Infringing Work] without reference to Plaintiff's Copyrighted Work *Coffee*.

4. **Substantial Similarity**:

To determine substantial similarity, courts compare the protectable elements of the copyrighted work with the allegedly infringing work. As established in *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), the test involves:

- o **Extrinsic Test**: An objective analysis of the similarities in protectable elements.
- o **Intrinsic Test**: A subjective assessment of whether an ordinary observer would perceive the works as substantially similar in their total concept and feel.

55. In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to the maximum amount of statutory damages for each act of copyright infringement.

56. Defendants' actions have caused, and continue to cause, substantial harm to Plaintiff, resulting in damages that cannot be fully quantified in monetary terms. Unless enjoined by this Court, Plaintiff will suffer irreparable harm for which no adequate remedy at law exists. Accordingly, Plaintiff requests a permanent injunction pursuant to 17 U.S.C. § 502, prohibiting Defendants from engaging in any further acts of infringement, including reproduction, distribution, sale, public performance, or any other unauthorized use or exploitation of Plaintiff's copyrighted work.

Complaint

1    57. Defendants, as co-infringers and practical partners, are jointly and severally liable for all

2        damages, statutory penalties, and other amounts owed to Plaintiff as a result of their

3        infringing conduct.

4                                    **PRAYER**

5            WHEREFORE, PLAINTIFF prays for judgment against Defendants as follows:

6    1.  For judgment in favor of Plaintiff and against Defendants;

7    2.  For a declaration that Defendants have willfully infringed Plaintiff's copyrighted work in

8        violation of the Copyright Act;

9    3.  For a declaration that Defendants are directly, vicariously, and/or contributorily liable for

10       copyright infringement, as applicable;

11   4.  For actual damages and profits for copyright infringement pursuant to 17 U.S.C. § 504 (a)(1)

12       and (b), including a finding that Defendants are jointly and severally liable for each other's

13       profits as practical partners;

14   5.  For an accounting of all profits, income, receipts, or other benefits derived by Defendants

15       from the reproduction, copying, display, promotion, distribution, or sale of products and

16       services or other media, either now known or hereafter devised, that improperly or

17       unlawfully infringe Plaintiff's copyright pursuant to 17 U.S.C. § 504(a)(1) and (b);

18   6.  For statutory damages, upon election prior to final judgment and in lieu of actual damages

19       and profits for copyright infringement pursuant to 17 U.S.C. § 504(c);

20   7.  Plaintiff respectfully requests an award of pre-judgment interest on all damages incurred due

21       to Defendants' infringing actions, calculated from the date of infringement, and post-

22       judgment interest on the total judgment amount, as provided by law.

23   8.  For the entry of an injunction requiring Defendants, their officers, agents, servants,

24       employees, representatives, successors, licensees, partners, attorneys and assigns, and all

25       persons acting in concert or participation with each or any one of them to be permanently

26       enjoined from directly or indirectly infringing, reproducing, displaying, promoting,

27       advertising, distributing, or selling any work that infringes, contributorily infringes, or

28       vicariously infringes Plaintiff's rights in the work protected by the Copyright Act, or in the

                                    Complaint

alternative, for a running royalty in the amount to be determined following entry of
judgment;

9.  For such other and further relief as the Court may deem just and proper.

**Exhibits:**

**Exhibit A**: A true and correct copy of the Copyright Registration Certificate for the Original
Work, accepted by the United States Copyright Office.

**Exhibit B**: Plaintiff's Analysis of the Melodic and Structural Similarities Between the
Original Work *Coffee* and the Infringing Work *Key West Intermezzo (I Saw You First)*.

Complaint

1    Respectively submitted,

2    Robert Wheeler

3    7127 Camino Degrazia, Unit 121

4    San Diego, CA 92111

5    (619) 846-5783

6    Throwinstones21@gmail.com

7

8

9

10

11

12

13

14

15    DATED: November 25, 2024

16                                                          _____

17                                                          Robert Wheeler
                                                            In Pro Per

18

19

20

21

22

23

24

25

26

27

28

Complaint

**Exhibit A:** Copyright Registration Certificate for the Musical Composition *Coffee* (U.S. Copyright Office Registration Number SR 902-078)

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**SR 902-078**

**Effective Date of Registration:**
May 12, 2021

**Registration Decision Date:**
July 10, 2021

### Title

| | |
|---|---|
| **Title of Work:** | Coffee |

### Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 1995 |
| **Date of 1st Publication:** | January 09, 1995 |
| **Nation of 1st Publication:** | United States |

### Author

| | |
|---|---|
| • **Author:** | Robert Wheeler |
| **Author Created:** | sound recording, lyrics and music |
| **Work made for hire:** | No |
| **Citizen of:** | United States |
| **Domiciled in:** | United States |

### Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Robert Wheeler |
| | 7127 Camino Degrazia, Unit 121, San Diego, CA, 92111, United States |

### Rights and Permissions

| | |
|---|---|
| **Name:** | Robert Wheeler |
| **Email:** | throwin.stones1@gmail.com |
| **Telephone:** | (619)843-5783 |
| **Address:** | 7127 Camino Degrazia |
| | Unit 121 |
| | San Diego, CA 92111 United States |

### Certification

Page 1 of 2

**Exhibit B:** Plaintiff's Analysis of the Melodic and Structural Similarities Between the Original Work *Coffee* and the Infringing Work *Key West Intermezzo (I Saw You First).*



